Opinion issued November 20, 2008



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00492-CV




MARK DONAHO, Appellant

V.

KING WADE BENNETT, Appellee




On Appeal from the 165th Judicial District
Harris County, Texas
Trial Court Cause No. 2008-30917


 

MEMORANDUM OPINION

          In this interlocutory appeal, appellant, Mark Donaho, appeals from the trial
court’s order granting a temporary injunction in favor of appellee, King Wade
Bennett. Bennett, acting individually and derivatively on behalf of MagiCon, LLC,
filed suit against Donaho, asserting causes of action for breach of fiduciary duty,
fraud, tortious interference with current and prospective business relations, and
conversion. Bennett sought damages for himself “and/or MagiCon, LLC.” Bennett
sought, and was granted, a temporary restraining order. After a hearing, the trial
court granted a temporary injunction against Donaho. In five issues, Donaho
contends the trial court erred by (1) failing to set the matter for trial, rendering the
temporary injunction void; (2) issuing the temporary injunction when there was no
evidence of irreparable injury to Bennett; (3) “issuing factual findings and deciding
ultimate issues in the temporary injunction order”; (4) granting injunctive relief
outside the scope of the pleadings and evidence; and (5) issuing a temporary
injunction that is “excessively broad.” We conclude the temporary injunction is not
void. We further conclude that the trial court abused its discretion by granting relief
that is overly broad and not supported by the pleadings and the evidence. We
therefore modify the temporary injunction and affirm as modified. 
BackgroundDonaho, a software developer, started a company, MagiCon, in 2001. Later,
Bennett, who first met and worked with Donaho in 1999, started his own company,
Jibe, LLC. In 2007, Donaho and Bennett began discussing combining their two
companies. In February, Donaho and Bennett agreed to do business as MagiCon,
LLC. On March 15, 2007, Donaho signed “Articles of Amendment” stating, “Mr.
Donaho and Mr. Bennett each maintain a 50% respective Membership/Ownership
interest in MagiCon, LLC.” In addition, Bennett invested over $100,000 in MagiCon
and also used personal funds to pay bills and other obligations of MagiCon. Donaho
referred to Bennett as a “principal” or a “partner” of MagiCon to employees and
clients. Shortly before this suit was filed, Donaho blocked Bennett’s access to all of
MagiCon’s accounts and told employees and clients that Bennett was no longer
associated with MagiCon. 
          Bennett filed this suit alleging causes of action for breach of fiduciary duty,
fraud, tortious interference with current and prospective business relationships, and
conversion. Bennett also asserted that Donaho was estopped from asserting that
Bennett was not a member and fifty percent owner of MagiCon. Bennett also sought
exemplary damages and injunctive relief. In the prayer of his petition, Bennett
requested an injunction to prohibit Donaho from:
1.Continuing to block King Wade Bennett’s access to company
bank accounts and credit card accounts;
 
2.Telling current and/or potential clients of MagiCon LLC’s that
King Wade Bennett is no longer associated with the company;
 
3.Use of MagiCon LLC’s funds and/or credit cards for any personal
purposes.

          Bennett produced evidence at the temporary injunction hearing to support his
claim. This evidence included:
• his testimony, including testimony that he invested over $100,000 in
the company and routinely paid its rent and utilities;
 
• Articles of Amendment signed by Donaho acknowledging Bennett’s
50% ownership of MagiCon, LLC; 
 
• testimony from a former employee that Bennett was routinely referred
to as a “partner” or “principal” in front of MagiCon, LLC employees and
clients; and 
 
• Donaho’s admission that he referred to Bennett as a “partner” and
“principal” in MagiCon, LLC.

          After the hearing, the trial court signed an order granting the temporary
injunction, which stated,
. . . . On considering the evidence received and the arguments of
counsel, the Court finds that [Bennett] will probably prevail on trial of
this cause; the Defendant, Mark Donaho, intends to use cash, accounts
receivable, intellectual property, software products, source code,
marketing materials, equipment, and other assets in which [Bennett] has
an ownership interest for [Donaho’s] personal benefit to exclusion of
[Bennett]. . . . 
 
IT IS, THEREFORE, ORDERED that Defendant, Mark Donaho,
is commanded forthwith to desist and refrain from using cash, accounts
receivable, intellectual property, source code, software products,
marketing materials, and/or equipment in which Plaintiff has an
ownership interest for Donaho’s personal benefit until judgment is
rendered in this cause by this Court. Donaho is specifically ordered to
cease and desist from selling, licensing, or otherwise profiting from
software products or applications that were once owned by MagiCon,
LLC until judgment in this cause is rendered by this Court.
 
IT IS, FURTHER, ORDERED that Defendant, Mark Donaho, is
commanded forthwith to desist and refrain from selling, licensing, or
otherwise profiting from the following software applications: Advisor
Web, NetAdvantage, Dashboard, Forecasting, WBAMS, WAM, BDEP,
Core Web, BDL, MIR, Reliability Application, Global Quality Desktop
Application (Approved Supplier, Assembly Log, Shipper Error, Supplier
Deviation), iMarks, Job Que, Ribbon Builder, SCM, External Website,
and all related databases, scripts, cubes, codes, files, documentation,
middleware and constructs required to run, operate and maintain all of
the above.

Failure to Include an Order Setting the Case for Trial on the Merits
          In his first issue, Donaho contends the temporary injunction is void because it
fails to comply with the Texas Rules of Civil Procedure by failing to set a date for a
trial on the merits. 
          In response, Bennett contends, “On July 2, 2008, the trial court inserted a trial
date in the previously signed temporary injunction order. As amended, the temporary
injunction order supersedes the Order about which Donaho complains, and cures any
alleged error or defect in the order.”
          In pertinent part, Rule 683 of the Texas Rules of Civil Procedure provides,
“Every order granting a temporary injunction shall include an order setting the cause
for trial on the merits with respect to the ultimate relief sought.” Tex. R. Civ. P. 683. 
“The requirements of Rule 683 are mandatory and must be strictly followed.” 
Interfirst Bank San Felipe, N.A. v. Paz Constr. Co., 715 S.W.2d 640, 641 (Tex. 1986);
see also Qwest Commc’ns Corp. v. AT & T Corp., 24 S.W.3d 334, 337 (Tex. 2000)
(citing Interfirst). In Interfirst Bank, the supreme court declared a temporary
injunction void and dissolved it because the temporary injunction did not include an
order setting the matter for trial. 715 S.W.2d at 640–41; see also Tex. Tech Univ. v.
Finley, 223 S.W.3d 510, 515 (Tex. App.—Amarillo 2006, no pet.) (declaring
temporary injunction void and dissolving it for failure to include setting for trial on
merits); City of Sherman v. Eiras, 157 S.W.3d 931, 931 (Tex. App.—Dallas 2005, no
pet.) (same); Kaufmann v. Morales, 93 S.W.3d 650, 656–57 (Tex. App.—Houston
[14th Dist.] 2002, no pet.) (same).
          Here, the trial court issued a temporary injunction on June 9, 2008. The order
provides, “IT IS, FURTHER, ORDERED, that trial on the merits of this cause is
ordered set for __________.” The space provided for a trial setting was left blank
when the trial court signed the order. However, the trial court later inserted a trial
date and the judge placed her initials and the date, “7/2/08,” next to the inserted trial
date. The order did not grant any different or further relief. The only change was the
insertion of the trial date. 
          “While an appeal from an interlocutory order is pending, the trial court retains
jurisdiction of the case and may make further orders, including one dissolving the
order appealed from . . . .” Tex. R. App. P. 29.5. “But the [trial] court must not make
an order that . . . interferes with or impairs the jurisdiction of the appellate court or
effectiveness of any relief sought or that may be granted on appeal.” Tex. R. App. P. 
29.5(b). “While an appeal from an interlocutory order is pending, . . . the appellate
court may review . . . a further appealable interlocutory order concerning the same
subject matter.” Tex. R. App. P. 29.6(a)(1); see Tanguy v. Laux, 259 S.W.3d 851, 855
(Tex. App.—Houston [1st Dist.] 2008, no pet.); Ahmed v. Shimi Ventures, L.P., 99
S.W.3d 682, 688–89 (Tex. App.—Houston [1st Dist.] 2003, no pet.).
          The trial court’s action in adding a date to the temporary injunction does not
interfere with or impair our jurisdiction or the effectiveness of the relief sought in the
appeal because the two injunctions are substantively the same, and Donaho’s
appellate challenges concerning the substance of the injunction remain alive. See
Tex. R. App. P. 29.5; Tanguy, 259 S.W.3d at 855. We hold the temporary injunction
complies with the rules of civil procedure by setting a date for trial on the merits.
          We overrule Donaho’s first issue.
Irreparable Injury
          In his fourth issue, Donaho contends there is no evidence that Bennett would
suffer irreparable injury unless the injunction issued.
 
          1.       Applicable Law
          “A temporary injunction’s purpose is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.” TMC Worldwide, L.P. v. Gray,
178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Walling v.
Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993)). “A temporary injunction is an
extraordinary remedy and does not issue as a matter of right.” Id. “To obtain a
temporary injunction, the applicant must plead and prove three specific elements: (1)
a cause of action against the defendant; (2) a probable right to the relief sought; and
(3) a probable, imminent, and irreparable injury in the interim.” Id. (citing Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002)). 
          “The decision to grant or deny a temporary injunction lies in the sound
discretion of the trial court, and the court’s ruling is subject to reversal only for a
clear abuse of discretion.” Id. (citing Walling, 863 S.W.2d at 58). “We must not
substitute our judgment for the trial court’s judgment unless the trial court’s action
was so arbitrary that it exceeded the bounds of reasonable discretion.” Id. (citing
Johnson v. Fourth Ct. App., 700 S.W.2d 916, 918 (Tex. 1985)). “In reviewing an
order granting or denying a temporary injunction, we draw all legitimate inferences
from the evidence in a manner most favorable to the trial court’s judgment.” Id.
(citing CRC-Evans Pipeline Int’l v. Myers, 927 S.W.2d 259, 262 (Tex.
App.—Houston [1st Dist.] 1996, no writ)). “Abuse of discretion does not exist if the
trial court heard conflicting evidence, and evidence appears in the record that
reasonably supports the trial court’s decision.” Id. (citing Davis v. Huey, 571 S.W.2d
859, 862 (Tex. 1978); Myers, 927 S.W.2d at 262)). If no evidence supports the trial
court’s decision, it abuses its discretion. See Wyly v. Preservation Dallas, 165
S.W.3d 460, 465 (Tex. App.—Dallas 2005, no pet.).
          2.       Analysis
          Here, the only element of a temporary injunction that Donaho attacks is the
element of irreparable injury. If a defendant is insolvent, and thus incapable of
responding in damages, a plaintiff does not have an adequate remedy at law. Loye v.
Travelhost, Inc., 156 S.W.3d 615, 621 (Tex. App.—Dallas 2004, no pet.) (citing Tel.
Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d 601, 611 (Tex.
App.—Houston [1st Dist.] 2002, no pet.)).
          The trial court stated in its order that Bennett “will be without any adequate
remedy at law in that [Donaho] will, in all likelihood, be unable to satisfy any
judgment rendered against him in [Bennett]’s favor.” The record supports this
conclusion. On April 14, 2008, approximately five weeks before this suit was filed,
Donaho asked Bennett for $68,000 to cover payroll for MagiCon, stating “Bank is
empty . . . .” In a letter to Bennett’s attorney on May 16, 2008, Donaho’s attorney
stated that “there is a risk of the venture being insolvent.” Because evidence in the
record reasonably supports the trial court’s decision, we cannot conclude that the trial
court abused its discretion by finding that Bennett would suffer irreparable harm
unless the injunction issued. TMC Worldwide, 178 S.W.3d at 36.
          We overrule Donaho’s fourth issue.
Pleadings and Evidence to Support Injunctive Relief
          In his second, third, and fifth issues, Donaho challenges the sufficiency of the
pleadings and the evidence to support the trial court’s order. The arguments within
these issues overlap, but may be separated into three complaints: the trial court erred
by (1) deciding ultimate issues of fact that should be decided at a trial on the merits;
(2) granting relief not supported by Bennett’s pleadings or the evidence presented at
the hearing; and (3) granting relief that is broader than necessary to maintain the
status quo.


 
          1.       Ultimate Issues    
          Donaho asserts, “There are no pleadings (or evidence on the point) to support
the granted relief determining the ultimate issue of ownership of software rights and
the permitted use thereof[.]” Donaho contends that the trial court’s injunction
“effectively determines that Bennett does have an ownership interest in MagiCon,
which is the ultimate issue that should be only determined at trial.” 
          The preliminary portion of the temporary injunction states, “Donaho intends
to use cash, accounts receivable, intellectual property, software products, source code,
marketing materials, equipment, and other assets in which [Bennett] has an
ownership interest for [Donaho’s] personal benefit to exclusion of [Bennett].”
(Emphasis added). The temporary injunction also forbids Donaho “from using cash,
accounts receivable, intellectual property, source code, software products, marketing
materials, and/or equipment in which [Bennett] has an ownership interest for
Donaho’s personal benefit.” (Emphasis added). Donaho contends that this amounts
to a decision on the ultimate merits of Bennett’s suit to establish partial ownership of
MagiCon, LLC.
          “Findings” recited in a judgment or order do not control the outcome of a case. 
Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003,
no pet.). First, such findings do not meet the requirements of Texas Rule of Civil
Procedure 299a. Id.; see Tex. R. Civ. P. 299a (requiring findings of fact to be
separately filed and not simply recited in judgment). In an appeal from an
interlocutory order, findings of fact and conclusions of law filed in conjunction with
the order may be “helpful” in determining if the trial court properly exercised its
discretion, but they are not binding upon this Court in reviewing a trial court’s
exercise of discretion. Tom James of Dallas, Inc., 109 S.W.3d at 884 (citing IKB
Indus., Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 442 (Tex. 1997); Chrysler Corp. v.
Blackmon, 841 S.W.2d 844, 852 (Tex. 1992) (orig. proceeding)).  
          Second, the ultimate issues of the controversy, both legal and factual, are not
before the trial court during a temporary injunction hearing. The only issue is
whether the applicant for temporary injunction may maintain the status quo because
he has shown (1) a probable right of success at final trial; and (2) imminent,
irreparable injury in the interim if the injunction is not issued. See id. (citing Walling,
863 S.W.2d at 57). 
          Finally, a trial court’s decision whether to grant a temporary injunction is based
on the record presented at the temporary injunction hearing. Reviewing courts will
not assume that the evidence taken at a preliminary hearing will be the same as the
evidence developed at a full trial on the merits. See id. (citing Davis, 571 S.W.2d at
862).
          Thus, the trial court’s “finding” recited in the temporary injunction order is not
a determination of an ultimate issue in the case, and we overrule Donaho’s second
issue. See id. at 884–85.
          2.       No Pleadings or Evidence of Software
          Donaho contends the trial court erred by granting relief in the temporary
injunction that was not supported by Bennett’s pleadings or the evidence presented
at the temporary injunction hearing. Specifically, Donaho asserts the trial court erred
by making “a declaration of ownership and determination of entitlement to the[] use”
of the named software, and this was error because “[t]he ownership of these items was
never pled for in the relief requested and virtually all of the software titles listed in
the Order were never even mentioned at the hearing.”
          “No writ of injunction shall be granted unless the applicant therefor shall
present his petition to the judge verified by his affidavit and containing a plain and
intelligible statement of the grounds for such relief.” Tex. R. Civ. P. 682. A trial
court may grant temporary injunctive relief although the applicant has not specifically
set forth the exact wording of the requested temporary injunction. Sharma v. Vinmar 
Int’l, Ltd., 231 S.W.3d 405, 421 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In
Sharma, the court held appellant complied with rule 682 by “pleading facts
underlying its cause of action” and requesting “broad injunctive relief.” Id. The
court also held that because the trial court narrowed the broad injunctive relief
requested to that conforming to the pleadings and evidence, the trial court did not
abuse its discretion. See id.
          Here, in contrast to Sharma, Bennett did not plead any facts relating to misuse
of the listed software and did not request “broad injunctive relief.” Bennett’s factual
allegations did not mention any software. Moreover, the factual allegations relate to
Donaho’s wrongfully excluding Bennett from MagiCon and Donaho’s misuse of
MagiCon’s funds for his personal benefit. Bennett’s requested injunctive relief was
limited to a request for the trial court to enjoin Donaho from
1.Continuing to block King Wade Bennett’s access to company
bank accounts and credit card accounts;
 
2.Telling current and/or potential clients of MagiCon LLC’s that
King Wade Bennett is no longer associated with the company;
 
3.Use of MagiCon LLC’s funds and/or credit cards for any personal
purposes.

Also in contrast to Sharma, the trial court did not narrow the scope of requested
relief, but instead expanded it. Unlike Sharma, nothing in the pleadings—factual
allegations or requested relief—addresses the listed software or Donaho’s use or
misuse of the listed software. Further, the software specifically enumerated in the
injunction was not mentioned in the evidence presented at the hearing.


 We conclude
the trial court abused its discretion in granting relief concerning the software
specifically named in its order because the relief is not supported by the pleadings or
evidence.
          3.       Status Quo
           Donaho asserts the trial court erred by granting the temporary injunction
because it does not maintain the status quo.
          “A temporary injunction’s purpose is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.” TMC Worldwide, 178
S.W.3d at 36) (citing Walling, 863 S.W.2d at 57). The status quo is defined as, “the
last, actual, peaceable, non-contested status which preceded the pending
controversy.” In re Newton, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).
          Donaho contends, 
[Under the status quo of this case,] Donaho was never subject to any
restrictions with respect to any property, other than from “using
MagiCon, LLC funds and/or resources for personal benefit.” The Order,
however, enjoins Mr. Donaho from selling or licensing various software
programs for any reason. In this scenario [Donaho] cannot even
continue the operations of MagiCon, which destroys any opportunity to
salvage the enterprise.

Bennett’s brief does not address the issue of the status quo. 
          The temporary injunction’s language prohibits Donaho from “selling, licensing,
or otherwise profiting from the following software applications” for any reason. 
However, as noted above, neither the pleadings nor the evidence address Donaho’s
conduct with the software applications, which were licensed and sold by the business. 
The trial court’s order granting temporary injunctive relief is overly broad because
it goes beyond what is necessary to preserve the status quo. See Stone v. Griffin
Commc’ns and Sec. Sys., Inc., 53 S.W.3d 687, 695 (Tex. App.—Tyler 2001, no pet.)
(holding temporary injunction too broad for placing restrictions on defendant that
were not part of covenant not to compete at issue between parties). We therefore
conclude the trial court abused its discretion. See id. 
          We sustain Donaho’s second, third, and fifth issues, to the extent they concern
the trial court’s granting relief that was not supported by the pleadings and the
evidence and was broader than necessary to preserve the status quo. 
          4.       Appellate Relief
          Appellate courts may modify an overly broad injunction. Id. (citing T-N-T
Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 25 (Tex.
App.—Houston [1st Dist.] 1998, no pet.)). Having determined that the trial court
abused its discretion by granting temporary injunctive relief that is not supported by
the pleadings or evidence and is overly broad, we modify the temporary injunction
as follows:
          The first paragraph of the temporary injunction states, 
IT IS, THEREFORE, ORDERED that Defendant, Mark Donaho,
is commanded forthwith to desist and refrain from using cash, accounts
receivable, intellectual property, source code, software products,
marketing materials, and/or equipment in which Plaintiff has an
ownership interest for Donaho’s personal benefit until judgment is
rendered in this cause by this Court. Donaho is specifically ordered to
cease and desist from selling, licensing, or otherwise profiting from
software products or applications that were once owned by MagiCon,
LLC until judgment in this cause is rendered by this Court.

We modify this paragraph by inserting the bold-faced language below, to provide,
 
IT IS, THEREFORE, ORDERED that Defendant, Mark Donaho,
is commanded forthwith to desist and refrain from using cash, accounts
receivable, intellectual property, source code, software products,
marketing materials, and/or equipment in which Plaintiff has an
ownership interest for Donaho’s personal benefit until judgment is
rendered in this cause by this Court. Donaho is specifically ordered to
cease and desist from selling, licensing, or otherwise profiting from
software products or applications that were once owned by MagiCon,
LLC for Donaho’s personal benefit until judgment in this cause is
rendered by this Court.

We delete the entirety of the second paragraph, which states,                                    
IT IS, FURTHER, ORDERED that Defendant, Mark Donaho, is
commanded forthwith to desist and refrain from SELLING,
LICENSING, OR OTHERWISE PROFITING FROM THE
FOLLOWING SOFTWARE APPLICATIONS: Advisor Web,
NetAdvantage, Dashboard, Forecasting, WBAMS, WAM, BDEP, Core
Web, BDL, MIR, Reliabbility Application, Global Quality Desktop
Application (Approved Supplier, Assembly Log, Shipper Error, Supplier
Deviation), iMarks, Job Que, Ribbon Builder, SCM, External Website,
and all related databases, scripts, cubes, codes, files, documentation,
middleware and constructs required to run, operate and maintain all of
the above.

Conclusion
          We modify the trial court’s temporary injunction and affirm as modified.



                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Keyes, and Alcala.